# Duval's Estate.

*Will—Construction—Devise—Life estate—Trust and trustees.*

Where a testator specifically devises real estate to his daughter for life in trust and gives her a share in his residuary estate, but directs that such share "shall be held in trust for her by her already designated trustee," the gift of the residuary estate to the daughter will be construed as a gift for life only, especially is this true where the beneficiary and all parties in interest treated it as a trust estate during the life of the daughter, a period of sixty-eight years from the creation of the trust, and where the intention not to give an absolute estate appears from the four corners of the will.

Argued March 23, 1910.    Appeal, No. 382, Jan. T.,1909, by Samuel Wagner, Executor of the Will of Sophia M. Ash, deceased, from decree of O. C. Phila. Co., April T., 1879, No. 248, dismissing exceptions to adjudication in Estate of James S. Duval, deceased.    Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication.

From the record it appeared that James Duval died in 1842, leaving a will dated March 22, 1842.   In the first nine of the ten items thereof he made specific devises of sundry parts of his real estate among his children and grandchildren, the ninth item being of a store on Market street and a house on Tenth street, Philadelphia, to his daughter Sophia M. Ash, "to be held in trust for her or her children by Samuel Wagner, but should the said Sophia die without children, then the said properties shall revert to my estate to be divided among my children or their survivors."   Four days later he executed a codicil to his will in which after making a couple of pecuniary bequests, a specific devise in favor of a grandson and a provision in relation to his son William's share of his remaining estate, he declared it to be his will "in the event of the death of my wife Catharine

that the portion of my remaining estate that may come to my daughter Sophia shall be held in trust for her by her already designated trustee."

The testator then proceeded, "for the prevention of uncertainties as to the meaning and intention of the several provisions of [his] last will," to explain each one of the nine specific devises of his will in detail. In relation to item nine he declared, "it is my intention and I do so declare it, to give to the children of my daughter Sophia M. Ash the fee simple of the real estate therein devised to her, subject to the contingency, limitations and trusts therein mentioned, and if she should die without leaving any children then living, that the estate devised by the said clause, or by my will otherwise bequeathed to her, shall go to my surviving children, and to the issue of any of my children who may have died and to their heirs, share and share alike, . . . . giving however, to the husband of my said daughter Sophia, if he be living, the use and benefit of such real estate and the income of her personal estate during his natural life and no longer." Then followed a provision in relation to item ten of the will, as follows: "Also it is my will, and I do hereby devise all the rest and residue of my estate, wheresoever situated, subject to the life estate therein of my wife Catharine Duval, to my son Lewis Duval, and to my sons-in-law, Samuel Wagner and George B. Rodney . . . . in trust to sell and dispose of all the said residue of my said real estate either at public or private sale . . . . and the net proceeds to be first applied in payment of my debts . . . . and the surplus of such purchase money to be distributed by the said trustees to and among my several children who may be living and to the issue of such as may have died, in shares according to the number of those living and those who have died leaving issue equally."

The real estate was afterwards sold, and the share of Sophia M. Ash in the proceeds is the fund for distribution in this case.

In 1858, the trustees filed their account in the orphans' court, and it was referred to John M. Collins, Esq., as auditor. The auditor awarded the share of Sophia M. Ash to Samuel Wagner in trust for her; and on confirmation of the report of the auditor by the orphans' court, the share was paid to Samuel Wagner, in trust for her. Samuel Wagner died in 1879, and on June 6, 1896, the Real Estate Trust Company was appointed trustee in his place by the orphans' court. Sophia M. Ash died May 2, 1909, having survived her husband, leaving a will whereof she appointed Samuel Wagner (son of the Samuel Wagner above named), sole executor. The Real Estate Trust Company duly filed its account as trustee in the orphans' court. At the audit the fund was claimed by the executor of Sophia M. Ash, but the claim was disallowed by the auditing judge, and the fund awarded to the several children of the testatrix.

The court in an opinion by DALLETT, J., with a dissenting opinion by PENROSE, J., sustained the adjudication by ANDERSON, J., awarding the fund for distribution to all the children of Sophia M. Ash in equal shares.

*Error assigned* was the decree of the court.

*W. W. Montgomery, Jr.,* and *W. W. Montgomery* for appellant, cited: Biddle's Est., 28 Pa. 59; Mickley's App., 92 Pa. 514; Fahrney v. Holsinger, 65 Pa. 388; Flick v. Oil Co., 188 Pa. 317; Mitchell v. Ry. Co., 165 Pa. 645; Richards v. Bentz, 212 Pa. 93; Ault v. Karch, 220 Pa. 366.

*William S. Clawson* for Emmeline Reed Bedell, appellee.

*Alfred M. Mohr,* with him *William S. Clawson,* for sons of Sophia M. Ash, appellees.

OPINION BY MR. JUSTICE ELKIN, May 24, 1910:

The answer to the question raised by this appeal de-

pends upon the construction of a will made March 18, 1842, and a codicil added four days later. It relates to the share of the residuary estate given by the testator to a daughter. The will and codicil were admitted to probate after the death of the testator which occurred about one month after their execution and administration followed in due course. The fund for distribution was derived from the proceeds of the sale of real estate under the direction contained in the residuary clause of the will. The testator died in 1842, his widow in 1857, and the daughter, Sophia M. Ash, the distribution of whose estate is in controversy here, in 1909. In 1859, the auditor appointed to audit and adjust the first and second accounts of the surviving testamentary trustees reported a distribution and awarded the share of Sophia M. Ash to the trustees to be held in trust for her as directed by the will and it was so held in trust up to the time of her death. It thus appears that the share of Sophia M. Ash given to her by the will of her father has been held in trust since the death of the testator in 1842, down to the death of the widow in 1857, and from that time to the present, in all a period of sixty-seven years, for the use and benefit of this daughter for whom it was created. Sophia M. Ash made a will giving her entire estate to two daughters, who now claim the corpus of the trust estate as legatees under the will of their mother. The other children of Sophia M. Ash, not beneficiaries under the will of their mother, claim that the fund thus held in trust was not an absolute estate in their mother, but that it passed under the will of James S. Duval, the original testator. The whole controversy therefore turns upon the question whether Sophia M. Ash took an absolute estate or only a life interest in the share set apart for her use under the residuary clause in the will of her father. The learned orphans' court held that Sophia M. Ash only took a life interest in the share thus set apart for her use and that her children did not take through her but as devisees or legatees under the will of James S.

Duval. While this was the conclusion of the court, a dissenting opinion was filed in support of the view that Sophia M. Ash took an absolute estate and had the right to dispose of the same by will. It must be conceded that the question is not free from difficulty and that different views may be entertained and supported under established rules of construction, depending of course upon the intention of the original testator as gathered from the four corners of his will. Under the circumstances the will and codicil must be treated as one instrument because four days after the execution of his will the testator by means of the codicil undertook to declare his intention and make clear his purpose with reference to every disposition of his property made in the original will. The codicil is longer than the will, and the declaration of intention about as involved as the will itself, so that no one can say with absolute certainty just what the testator meant. It is perfectly clear that as to the real estate specifically devised to his daughter, Sophia M. Ash, only a life interest was given. As to such real estate the testator in his codicil said, "It is my intention, and I so declare it, to give to the children of my daughter, Sophia M. Ash, the fee simple of the real estate therein devised to her, subject to the contingency, limitation and trusts therein mentioned." If the fund for distribution had arisen from the sale of real estate which passed under clause nine of the will of course it would not be contended that Sophia M. Ash took an absolute estate when the testator had expressly declared that the fee simple title should vest in her children. It is argued for appellant that this provision does not relate to the residuary estate and that it is without significance in arriving at the intention of the testator with respect to the same. It is true it does not relate in terms to the share of the estate which passed under the residuary clause and it may be that it should have no controlling effect in the determination of the question here involved. It is apparent, however, that for some reason the testator did

not give an absolute estate to this daughter but in every instance in which mention is made of her share it is coupled with the provision that it shall be held in trust for her. As to the residuary estate it is provided: "I also declare it to be my will in the event of the death of my wife Catherine that the portion of my remaining estate that may come to my daughter Sophia shall be held in trust for her by her already designated trustee." Here then as to the residuary share it is expressly provided that it shall be held in trust for her by the same trustee designated to hold the trust estate specifically devised to this daughter under clause nine. In reading the whole will we cannot escape the conclusion that the testator did not intend to give this daughter an absolute estate but that his purpose was to give her the use and benefit of the share set apart for her during life and that at her death the corpus of the trust should pass to her children. While this intention is not so clear as to the residuary share, it does sufficiently appear by the express declaration of the testator to warrant the belief and justify the conclusion that he so intended it. He did provide that this residuary share should be held in trust and by the same trustee, and it seems but reasonable to hold that he intended the whole trust estate to be held in the same way, for the same purpose and with like incidents of use and ownership. This is what the court below held and we think properly so held. The testator created a trust to safeguard every gift to this daughter which suggests an intent not to give the fee, and while this is not conclusive it is a fact which taken in connection with other parts of the will has a strong bearing in arriving at a proper construction of that instrument. Again, all of the parties in interest up to the time of the death of Sophia M. Ash acted upon the theory that she only had a life interest in the trust estate. It has been held in trust for sixty-eight years and while this is in no sense conclusive it shows that the construction put upon the will by the auditor in 1859, when the share of Sophia M.

Ash was awarded in trust for her use was accepted by her during the remaining years of her life as the proper interpretation of the will. If she took an absolute estate under the residuary clause she was entitled to receive the same at the death of her mother in 1857, but no such contention was then made nor was any such right asserted in the lifetime of the beneficiary. We therefore concur with the learned court below that Sophia M. Ash did not take an absolute estate under the residuary clause of her father's will but had a life interest in the share thus set apart for her use and we put this upon the ground that the intention of the testator as gathered from the whole will indicates such a purpose.

Decree affirmed at cost of appellant.